# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **AUDREY MINOR,** | ) |
| **PLAINTIFF,** | ) |
| **VS.** | )   5:08-cv-917-JHH |
| **MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY,** | ) ) |
| **DEFENDANT.** | ) |

## MEMORANDUM OF DECISION

Plaintiff Audrey Minor brings this action pursuant to Sections 205(g) and 1631(c) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c), seeking review of the decision of the Commissioner of Social Security denying her application for disability income insurance (DIB) under Title II of the Social Security Act and supplemental security income (SSI) under Title XVI of the Act.[1] For the reasons set forth below, the decision is due to be affirmed.

---

[1] In general, the legal standards are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions. See Borden v. Astrue, 494 F. Supp.2d 1278, 1280 n.1 (N.D. Ala. 2007).

## I.  PROCEDURAL HISTORY

Plaintiff filed her application for DIB and SSI on May 16, 2006, alleging a disability onset date of June 15, 2005.  (Tr. 87-93.)  This onset date was later amended to April 30, 2006.  (Tr. 108.)  Her application was denied, and the plaintiff then requested and received a hearing before an Administrative Law Judge (ALJ).  (Tr. 23-44, 64-68.)  The hearing was held on September 19, 2007, via video, with plaintiff appearing in Decatur, Alabama and the ALJ in Florence, Alabama.  (Tr. 23, 26, 52.)  In his October 12, 2007 decision, the ALJ determined that plaintiff was not disabled within the meaning of the Social Security Act and thus ineligible for DIB and SSI.  (Tr. 59.)  After the Appeals Council denied plaintiff's request for review of the decision of the ALJ (tr. 2-6), that decision became the final decision of the Commissioner, and therefore a proper subject of this court's review.

## II. STANDARD OF REVIEW

The only issues before this court are whether the record reveals substantial evidence to sustain the decision of the ALJ, see 42 U.S.C. § 405(g); <u>Dyer v. Barnhart</u>, 395 F.3d 1206, 1210 (11th Cir. 2005), and whether the correct legal standards were applied.  <u>Lamb v. Bowen</u>, 847 F.2d 698, 701 (11th Cir. 1988); <u>Chester v. Bowen</u>, 792 F.2d 129, 131 (11th Cir. 1986).  Sections 405(g) and

1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. See id. (citing Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence. Dyer, 395 F.3d at 1210 (citing Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). "It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Martin, 894 F.2d at 1529 (quoting Bloodsworth, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004). While the court acknowledges that judicial review of the findings of the ALJ is limited in scope, the court also notes that review "does not yield automatic affirmance.." Lamb, 847 F.2d at 701.

### III.  ADMINISTRATIVE RECORD

At the time of the hearing at issue, plaintiff was forty-nine (49) years old, had earned her G.E.D. and had a nursing degree.  (Tr. 28-29.)  Plaintiff previously worked as a printer, golf range assistant, and assembly worker for multiple manufacturing companies. (Tr. 28, 115.)  In her disability report, plaintiff alleged that she is unable to work because of congestive heart failure, emphysema, asthma, high blood pressure, sleep apnea, lower extremity and back arthritis, back fracture and insomnia.  (Tr. 114.)  According to plaintiff, due to these ailments, she has been unable to engage in substantial gainful activity since April 30, 2006.  (Tr. 108.)

At the hearing, plaintiff testified that her primary ailments are shortness of breath, chest pains and the pain in her lower back.  (Tr. 35.)  Plaintiff stated that any type of exertion results in shortness of breath, and that she experiences chest pain "pretty much every day" for which she takes nitroglycerine.  (Tr. 30.)  The chest pains, which she testified are caused by very little exertion,[2] affect her activities in that she has to lay down for thirty minutes to an hour when she experiences them.  (Tr. 31.)  Plaintiff underwent triple coronary bypass grafting in June 2005 and had left heart catheterizations in January and July 2006.  (Tr. 223.)

---

[2] Plaintiff testified that even walking for five minutes can result in chest pains.  (Tr. 31.)

Plaintiff testified that her lower back pain, caused by "some bad discs in [her] back and degenerative spine in [her] lower back" prevents her from sitting for longer than fifteen or twenty minutes at a time.[3] (Tr. 32.) Her lower back pain sometimes prevents her from getting out of bed, walking, or putting on her shoes. (Tr. 33.) She rated her back pain as a nine on a bad day and a four to five on a good day, and stated that she has more bad days than good days. (Id.)

Plaintiff also testified that she has sleep apnea for which she takes two kinds of sleeping medications.[4] (Tr. 34.) Even with the medication, plaintiff stated that she sleeps only three or four hours a night. (Id.) The lack of sleep forces plaintiff to lay down for an hour or so each day. (Id.)

As far as daily activities, plaintiff testified that she washes clothes and sweeps and mops the floors, although she has "a hard time mopping and sweeping, both." (Tr. 30.) She testified that she has problems standing because her feet swell and that she can stand for only fifteen minutes at a time. (Tr. 31.) She has a driver's license and sometimes drives. (Tr. 29-30.)

---

[3] Plaintiff stated that sitting also causes her feet to swell. (Tr. 32.) She takes a diuretic to help with the swelling. (Id.)

[4] Plaintiff stated that she "take[s] a sleeping pill and a muscle relaxer, or a nerve pill, whatever you call it, at night." (Tr. 34.)

## IV.  THE DECISION OF THE ALJ

Determination of disability under the Social Security Act requires a five step analysis.  See 20 C.F.R. § 404.1520.  First, the Commissioner determines whether the claimant is working.  Id.  Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities.  Id.  Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the regulations.  Id.  Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work.  Id.  The claimant's residual functional capacity is what the claimant can do despite his impairment.  Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work.  Id.  In making this final determination, the Commissioner will use the Medical-Vocational guidelines in Appendix 2 of part 404 of the regulations when all of the claimant's vocational factors and the residual functional capacity are the same as the criteria listed in the Appendix.  If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will not review the claim any further.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that "the claimant must establish a prima facie case by demonstrating that he can no longer perform his former employment." Freeman v. Schweiker, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once plaintiff shows that he can no longer perform his past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." Id.

The ALJ found that the plaintiff had not engaged in substantial gainful activity since April 20, 2006, her alleged onset date. (Tr. 54.) Next, the ALJ found that plaintiff has the following severe combination of impairments: congestive heart failure; chronic obstructive pulmonary disease (COPD); degenerative disc disease; hypertension; and obesity. (Id.) The ALJ then determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (Id.) Next, the ALJ found that, despite her impairments, plaintiff retained the residual functional capacity to perform light work with the following limitations: never climb ladders/ropes, scaffolds; avoid concentrated exposure to extreme cold/heat, wetness, humidity, noise, and fumes, odors, dusts, gases, poor ventilation, etc.; and avoid all exposure to hazardous machinery and unprotected heights. (Tr. 55.)

Based on the testimony of the vocational expert and her RFC, the ALJ determined that the plaintiff was unable to return to any of her past relevant work as a production line worker and golf range attendant. (Tr. 58.) However, considering the plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert, the ALJ found that there are jobs in the national economy that exist in significant numbers that the plaintiff can perform. (Tr. 58-59.) Therefore, the ALJ found that the plaintiff was not under a disability, as defined by the Act, from her alleged onset date of April 30, 2006 through the decision date of October 12, 2007. (Tr. 59.)

## V. PLAINTIFF'S ARGUMENT FOR REMAND OR REVERSAL

The plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative, remanded for further consideration. Plaintiff's brief does not contain a clear delineation of her argument in support of reversal or remand. Instead, her brief contains citation to legal authority without any application to the case at hand,[5] or arguments surrounding the facts without any citation to legal authority. With that said, the court addresses the two legal

---

[5] For instance, plaintiff's argument section begins with a recitation of the pain standard, but never discusses its application to the present case. (Doc. #9 at 4-7.)

8

contentions in support of reversal or remand that it can glean from the argument section of plaintiff's brief.  First, the plaintiff appears to argue that the ALJ's decision is not supported by substantial evidence and improper legal standards were applied because the RFC calculation lacks medical support.  (Doc. #9 at 4-6.)  Second, the plaintiff complains that the ALJ should have ordered an additional consultative examination.  (Id. at 6-7.)

*A.  Substantial Evidence and Proper Legal Standards Support the RFC Calculation of the ALJ.*

The ALJ applied proper legal standards when calculating the RFC of the plaintiff, and substantial evidence supports his conclusion.  An RFC assessment "is the adjudicator's ultimate finding of 'what you can still do despite your limitations.'"  SSR 96-5p, 61 Fed. Reg 34471, 34473 (1996) (citing 20 C.F.R. §§ 416.945 and 416.946).  The regulations make clear that the sole responsibility for determining a plaintiff's RFC falls on the ALJ.  See 20 C.F.R. §§ 404.1527(e)(2); 404.1545(a) (2007).   While an ALJ should review all of the medical evidence, and can consider opinions from acceptable medical sources when calculating RFC, "the final responsibility for deciding [those] issues is reserved for the Commissioner."  20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2)(2006); see SSR 96-5p, 61 Fed. Reg. 34471 (1996).

The ALJ's RFC assessment is supported by substantial medical evidence of record. Here, the ALJ determined that plaintiff could perform a limited range of light work, provided that the work not involve any climbing of ladders/ropes or scaffolds, no concentrated exposure to extreme cold/heat, wetness, humidity, noise, and fumes, odors, dusts, gases, poor ventilation, etc., and no exposure to hazardous machinery and unprotected heights. (Tr. 55.) In making that finding, the ALJ thoroughly analyzed and took into account the medical evidence of record. (See Tr. 56-58.)

Plaintiff contends, however, that the ALJ was "disingenuous" in giving Dr. Lincoln's September 2006 opinion that plaintiff had no limitations relating to her lower back impairment great weight in light of the 2007 lumbar spine x-rays and MRI.[6] (Doc. #9 at 5.) This argument ignores the fact that in making his opinion, Dr. Lincoln reviewed the then-current lumbar spine x-rays, and noted that they showed some multi-level spondylosis and moderate disc impairment. (Tr. 427.) Plaintiff does not allege that the 2007 x-rays and MRI are inconsistent with this 2006 information. The 2007 records certainly do not show any major changes in

---

[6] An MRI in March 2007 revealed a midline disc protrusion at L1-2, a bulging disc at L2-3, and atrophy of the multitifus muscles at L5-S1. (Tr. 469.) Lumbar spine x-rays in May 2007 showed moderate degenerative disc disease at L1-2 and L2-3 with prominent posterior hypertrophic change, possibly causing some spinal stenosis in this area. (Tr. 467.)

plaintiff's condition. Moreover, the ALJ specifically noted the results of the 2007 studies when he gave great weight to the opinion of plaintiff's treating doctor, Dr. Lincoln. (Tr. 57.)

Plaintiff also argues that the ALJ did not properly consider her obesity in combination with her other impairments. (Doc. #9 at 5-6.) Although it is true that obesity can cause limitations and exacerbate existing conditions, plaintiff does not specify any functional limitations, or provide any medical evidence to support such additional limitations, that she experiences due to obesity that would undermine the RFC assessment of the ALJ. The mere existence of an impairment does not reveal the extent to which that impairment limits a plaintiff's ability to work or undermine the ALJ's determination in that regard. See Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005). The ALJ correctly noted that none of plaintiff's treating medical sources have reported that her weight significantly limits her, nor do the medical record reveal "frequent discussions or advice" that it is "imperative for her to lose weight." (Tr. 57.)

This court is well-aware of its function as a reviewing court in this case. The Eleventh Circuit has made clear that the weighing of evidence is a function of the ALJ – not the district court. Graham v. Bowen, 790 F.2d 1572, 1575 (11th Cir. 1986). Indeed, even if the evidence preponderates against the ALJ's factual

11

findings, this court must affirm the decision of the ALJ if the decision is supported by substantial evidence. Ingram v. Astrue, 496 F.3d 1253, 1260 (11th Cir. 2007). In this case, it is. Because the medical evidence simply does not support a finding that plaintiff's conditions, individually or in combination, caused disabling limitations that preclude work at any level of exertion, the court concludes that the RFC assessment by the ALJ and the ultimate finding that the plaintiff is not disabled, are supported by substantial evidence.

  *B. The ALJ Did Not Err by Failing to Order a Consultative Examination.*

The court finds no error in the ALJ's decision not to order an additional consultative examination when calculating the plaintiff's RFC. Although it is certainly true that the ALJ could have ordered additional examinations to aid in his RFC assessment, he was not obliged to do so. The regulations clarify that a "consultative examination may be purchased when the evidence as a whole, both medical and non-medical, is not sufficient to support a decision on your claim." 20 C.F.R. §§ 404.1529a(b), 416.919a(b). Indeed, "'in fulfilling his duty to conduct a full and fair inquiry, the administrative law judge is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the administrative law judge to render a decision.'" Holladay v. Bowen, 848 F.2d 1206, 1207 (11th Cir. 1988) (quoting Ford v. Sec. of Health &

Human Servs., 659 F.2d 66, 69 (5th Cir. 1981)). Given the medical evidence of record, there was no reason for the ALJ to expend additional resources to obtain a superfluous opinion.

Moreover, it is important to note that while the ALJ has the duty to "investigate the facts and develop the arguments both for and against granting benefits," Sims v. Apfel, 530 U.S. 103, 111 (2000), the plaintiff has the responsibility to produce evidence in support of her disability claim, Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003). Evidence regarding the specific limitations and restrictions the plaintiff experiences in her ability to work is evidence the plaintiff is responsible for producing. See Ellison, 355 F.3d at 1276. Accordingly, it is the plaintiff, and not the ALJ, who carries the burden to provide a medical record that is complete in the first instance. See 20 C.F.R. §§ 416.913(e), 416.916. If the plaintiff had or knew of additional medical evidence that supports her claims of disability, it was the plaintiff's responsibility to raise that evidence for the ALJ to consider.

## VI.  CONCLUSION

For all of these reasons, the court concludes that the determination of the ALJ that plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's

final decision is due to be affirmed, and a separate order in accordance with this memorandum opinion will be entered.

 **DONE** this the   7th   day of May, 2009.

          */s/ James H. Hancock*
        SENIOR UNITED STATES DISTRICT JUDGE